UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -x
                                  :
UNITED STATES OF AMERICA          :      SEALED INDICTMENT
                                  :
         -v.-                     :      S2 08 Cr. 828
                                  :
MICHAEL BRENNAN,                  :
BRIAN CARSON,                     :
JOHN STAMBERGER, and              :
MICHAEL VIVENZIO,                 :
                                  :
              Defendants.         :
                                  :
- - - - - - - - - - - - - - - - -x

ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/30/09

COUNT ONE

(Conspiracy)

The Grand Jury charges:

RELEVANT ENTITIES AND BACKGROUND

1.    At all times relevant to this Indictment, the
United Brotherhood of Carpenters and Joiners (the "U.B.C.J.") was
a national labor union that represented skilled workers on
construction sites.  In New York City, the U.B.C.J. has
approximately 21,000 members and is divided into approximately
eleven locals within the five boroughs.

2.    The District Council of New York City and Vicinity
of the U.B.C.J. (the "District Council") is the administrative
body that oversees the New York City locals of the U.B.C.J.  The
District Council is located in Manhattan.  On behalf of its
locals, the District Council has entered into numerous contracts,
or collective bargaining agreements ("CBAs"), with various
construction contractors and associations of construction

contractors who operate at jobsites in the five boroughs of New York City.

3.   The CBAs govern many aspects of the relationship between individual contractors and individual members of the U.B.C.J. who are employed by such contractors as carpenters at jobsites within New York City.  Among other things, CBAs obligate that the contractor pay all of its workers at an hourly rate specified in the CBA and make contributions for each hour worked to the union benefit funds (the "District Council Benefit Funds").  The District Council Benefit Funds, most of which are subject to the provision of the Employee Retirement Income Security Act ("ERISA"), provide life insurance, hospitalization, medical care, pension and vacation benefits to union members. The CBAs also require that signatory contractors employ only union members to perform the specified construction work.

4.   Collective bargaining agreements generally empower the union to appoint a "shop steward" to each job.  Although shop stewards work at the jobsite with the other rank-and-file union members, they are also union fiduciaries.  The shop steward's principal duty is to be the daily "eyes and ears" of the union and to report a contractor's violations of the collective bargaining agreement.  The shop steward is required to submit weekly reports, called "shop steward reports," to the union office identifying union members who were employed on the jobsite

and the hours each member worked.  Thus, the shop steward is required to observe the number of hours worked at the jobsite by the union members in order to report the carpenter-hours accurately each week.

    5.   At all times relevant to this Indictment, On Par Construction ("On Par") was a drywall contractor that operated in New York City and its vicinity and was owned by a co-conspirator not named as a defendant herein ("CC-1").  On Par was a party to a CBA with the District Council of the U.B.C.J.  On Par's offices were located in Bronx, New York, or Mount Vernon, New York.

THE SCHEME

    6.   From in or about 1998, up through and including in or about 2006, MICHAEL BRENNAN, BRIAN CARSON, JOHN STAMBERGER, and MICHAEL VIVENZIO, the defendants, and others known and unknown, conspired to defraud the District Council and the District Council Benefit Funds.  BRENNAN, CARSON, STAMBERGER, and VIVENZIO, who were shop stewards assigned by the District Council to On Par jobsites, accepted cash bribes from CC-1 of On Par, in exchange for which BRENNAN, CARSON, STAMBERGER, and VIVENZIO each submitted false shop steward reports that underreported the number of union carpenters who worked on those On Par jobsites, and the hours that those carpenters worked.  With the assistance of BRENNAN, CARSON, STAMBERGER, VIVENZIO, and others, On Par was able to evade its obligations under the CBA to the District

3

Council and the District Council Benefit Funds by, among other things, not making contributions to the District Council Benefit Funds, hiring nonunion workers, and paying workers cash wages.

<u>THE CONSPIRACY</u>

7.    From in or about 1998, up through and including in or about 2006, in the Southern District of New York and elsewhere, BRENNAN, BRIAN CARSON, JOHN STAMBERGER, and MICHAEL VIVENZIO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Title 18, United States Code, Section 664, and Title 29, United States Code, Sections 186(a)(1), (b)(1) and (d)(2).

<u>OBJECTS OF THE CONSPIRACY</u>

8.    It was a part and an object of the conspiracy that MICHAEL BRENNAN, BRIAN CARSON, JOHN STAMBERGER, and MICHAEL VIVENZIO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly would and did embezzle, steal, abstract, and convert to their own use, and to the use of another, moneys, funds, securities, premiums, credits, property, and other assets of an "employee welfare benefit plan or employee pension benefit plan," as that term is defined in Title 18, United States Code, Section 664, and of funds connected therewith, namely employer contributions owed to the District

4

Council Benefit Funds, in violation of Title 18, United States Code, Section 664.

9.    It was further a part and an object of the conspiracy that MICHAEL BRENNAN, BRIAN CARSON, JOHN STAMBERGER, and MICHAEL VIVENZIO, the defendants, and others known and unknown, being representatives of employees who were employed in an industry affecting commerce, to wit, members of the U.B.C.J. who worked for a construction contractor, unlawfully, willfully, and knowingly would and did receive and accept, and agree to receive and accept, a payment, loan, and delivery of money and other thing of value exceeding $1,000, from an employer and persons acting in the interest of such an employer, in violation of Title 29, United States Code, Sections 186(a)(1), (b)(1) and (d)(2).

                OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

10.    In furtherance of the conspiracy and to effect the illegal objects thereof, MICHAEL BRENNAN, BRIAN CARSON, JOHN STAMBERGER, and MICHAEL VIVENZIO, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.    In 2004, BRENNAN, while acting as the shop steward assigned to On Par's jobsite at Times Square Tower, in Manhattan, signed and submitted false shop steward reports to the union misrepresenting the number of union workers and the hours

                                    5

those union members worked on that jobsite, and in return BRENNAN received cash bribes from CC-1.

a.   In 2003, VIVENZIO, while acting as the shop steward assigned to On Par's jobsite at 205 East 45th Street in Manhattan, signed and submitted false shop steward reports to the union misrepresenting the number of union workers and the hours those union members worked on that jobsite, and in return VIVENZIO received cash bribes from CC-1.

b.   In 2004, CARSON, while acting as the shop steward assigned to On Par's jobsite at 63 Wall Street in Manhattan, signed and submitted false shop steward reports to the union misrepresenting the number of union workers and the hours those union members worked on that jobsite, and in return CARSON received cash bribes from CC-1.

c.   In 2003, STAMBERGER, while acting as the shop steward assigned to On Par's jobsite at 89 West 3rd Street, in Manhattan, signed and submitted false shop steward reports to the union misrepresenting the number of union workers and the hours those union members worked on that jobsite, and in return STAMBERGER received cash bribes from CC-1.

(Title 18, United States Code, Section 371.)

6

COUNT TWO

(Employee Benefit Plan Embezzlement – Michael Brennan)

The Grand Jury further charges:

11.   Paragraphs 1 through 10 of this Indictment are repeated and realleged and incorporated by reference as though fully set forth herein.

12.   From in or about January 2000, up through and including in or about July 2004, in the Southern District of New York and elsewhere, MICHAEL BRENNAN, the defendant, and others known and unknown, unlawfully, willfully, and knowingly did embezzle, steal, abstract, and convert to their own use, and to the use of another, moneys, funds, securities, premiums, credits, property, and other assets of an "employee welfare benefit plan or employee pension benefit plan," as that term is defined in Title 18, United States Code, Section 664, and of a fund connected therewith, namely employer contributions owed to the District Council Benefit Funds, to wit, BRENNAN, in exchange for cash bribes, submitted false shop steward reports to the local union that underreported the number of union members on various On Par jobsites in Manhattan, including Times Square Tower, and the hours worked on those jobsites, thereby aiding On Par to violate the terms of its collective bargaining agreement with the District Council by, among other things, evading contributions to

the District Council Benefit Funds.

(Title 18, United States Code, Sections 664 and 2.)

COUNT THREE

(Employee Benefit Plan Embezzlement - Michael Vivenzio)

The Grand Jury further charges:

13.   Paragraphs 1 through 10 of this Indictment are repeated and realleged and incorporated by reference as though fully set forth herein.

14.   From in or about September 2002, up through and including in or about September 2003, in the Southern District of New York and elsewhere, MICHAEL VIVENZIO, the defendant, and others known and unknown, unlawfully, willfully, and knowingly did embezzle, steal, abstract, and convert to their own use, and to the use of another, moneys, funds, securities, premiums, credits, property, and other assets of an "employee welfare benefit plan or employee pension benefit plan," as that term is defined in Title 18, United States Code, Section 664, and of a fund connected therewith, namely employer contributions owed to the District Council Benefit Funds, to wit, VIVENZIO, in exchange for cash bribes, submitted false shop steward reports to the local union that underreported the number of union members on an On Par jobsite at 205 East 45th Street, in Manhattan, and the hours worked on that jobsite, thereby aiding On Par to violate the terms of its collective bargaining agreement with the District Council by, among other things, evading contributions to

8

the District Council Benefit Funds.

(Title 18, United States Code, Sections 664 and 2.)

<u>COUNT FOUR</u>

<u>(Employee Benefit Plan Embezzlement - Brian Carson)</u>

The Grand Jury further charges:

15.   Paragraphs 1 through 10 of this Indictment are repeated and realleged and incorporated by reference as though fully set forth herein.

16.   From in or about October 2003, up through and including in or about January 2005, in the Southern District of New York and elsewhere, BRIAN CARSON, the defendant, and others known and unknown, unlawfully, willfully, and knowingly did embezzle, steal, abstract, and convert to their own use, and to the use of another, moneys, funds, securities, premiums, credits, property, and other assets of an "employee welfare benefit plan or employee pension benefit plan," as that term is defined in Title 18, United States Code, Section 664, and of a fund connected therewith, namely employer contributions owed to the District Council Benefit Funds, to wit, CARSON, in exchange for cash bribes, submitted false shop steward reports to the local union that underreported the number of union members on an On Par jobsite at 63 Wall Street, in Manhattan, and the hours worked on that jobsite, thereby aiding On Par to violate the terms of its collective bargaining agreement with the District Council by, among other things, evading contributions to the District Council

9

Benefit Funds.

(Title 18, United States Code, Sections 664 and 2.)

<u>COUNT FIVE</u>

<u>(Employee Benefit Plan Embezzlement – John Stamberger)</u>

The Grand Jury further charges:

17.   Paragraphs 1 through 10 of this Indictment are repeated and realleged and incorporated by reference as though fully set forth herein.

18.   From in or about November 2002, up through and including in or about December 2003, in the Southern District of New York and elsewhere, JOHN STAMBERGER, the defendant, and others known and unknown, unlawfully, willfully, and knowingly did embezzle, steal, abstract, and convert to their own use, and to the use of another, moneys, funds, securities, premiums, credits, property, and other assets of an "employee welfare benefit plan or employee pension benefit plan," as that term is defined in Title 18, United States Code, Section 664, and of a fund connected therewith, namely employer contributions owed to the District Council Benefit Funds, to wit, STAMBERGER, in exchange for cash bribes, submitted false shop steward reports to the local union that underreported the number of union members on an On Par jobsite at 89 West Third Street, in Manhattan, and the hours worked on that jobsite, thereby aiding On Par to violate the terms of its collective bargaining agreement with the District Council by, among other things, evading contributions to

the District Council Benefit Funds.

(Title 18, United States Code, Sections 664 and 2.)

COUNT SIX

(Unlawful Acceptance of Payments by Labor Representative
– Michael Brennan)

The Grand Jury further charges:

19.  Paragraphs 1 through 10 of this Indictment are repeated and realleged and incorporated by reference as though fully set forth herein.

20.  From in or about January 2000, up through and including in or about July 2004, in the Southern District of New York and elsewhere, MICHAEL BRENNAN, the defendant, being a representative of employees who were employed in an industry affecting commerce, to wit, members of the U.B.C.J. who worked for a construction contractor, unlawfully, willfully, and knowingly did receive and accept, and agree to receive and accept, a payment, loan, and delivery of money and other thing of value exceeding $1,000, from an employer and persons acting in the interest of such an employer, to wit, BRENNAN, while acting as a shop steward for the U.B.C.J. at various On Par jobsites, including but not limited to Times Square Tower in Manhattan, received cash bribes from CC-1 of On Par, a contractor that had signed a collective bargaining agreement with the U.B.C.J. and was doing work at that jobsite, in exchange for BRENNAN's agreement to submit false shop steward reports.

(Title 29, United States Code, Sections 186(a)(1), (b)(1) and (d)(2).)

11

COUNT SEVEN

(Unlawful Acceptance of Payments by Labor Representative –
Michael Vivenzio)

The Grand Jury further charges:

21.   Paragraphs 1 through 10 of this Indictment are repeated and realleged and incorporated by reference as though fully set forth herein.

22.   From in or about September 2002, up through and including in or about September 2003, in the Southern District of New York and elsewhere, MICHAEL VIVENZIO, the defendant, being a representative of employees who were employed in an industry affecting commerce, to wit, members of the U.B.C.J. who worked for a construction contractor, unlawfully, willfully, and knowingly did receive and accept, and agree to receive and accept, a payment, loan, and delivery of money and other thing of value exceeding $1,000, from an employer and persons acting in the interest of such an employer, to wit, VIVENZIO, while acting as a shop steward for the U.B.C.J. at a jobsite at 205 East 45th Street, New York, New York, received cash bribes from CC-1 of On Par, a contractor that had signed a collective bargaining agreement with the U.B.C.J. and was doing work at that jobsite, in exchange for VIVENZIO's agreement to submit false shop steward reports.

(Title 29, United States Code, Sections 186(a)(1), (b)(1) and (d)(2).)

COUNT EIGHT

(Unlawful Acceptance of Payments by Labor Representative
– Brian Carson)

The Grand Jury further charges:

23.   Paragraphs 1 through 10 of this Indictment are repeated and realleged and incorporated by reference as though fully set forth herein.

24.   From in or about October 2003, up through and including in or about January 2005, in the Southern District of New York and elsewhere, BRIAN CARSON, the defendant, being a representative of employees who were employed in an industry affecting commerce, to wit, members of the U.B.C.J. who worked for a construction contractor, unlawfully, willfully, and knowingly did receive and accept, and agree to receive and accept, a payment, loan, and delivery of money and other thing of value exceeding $1,000, from an employer and persons acting in the interest of such an employer, to wit, CARSON while acting as a shop steward for the U.B.C.J. at a jobsite at 63 Wall Street, New York, New York, received cash bribes from CC-1 of On Par, a contractor that had signed a collective bargaining agreement with the U.B.C.J. and was doing work at that jobsite, in exchange for CARSON's agreement to submit false shop steward reports.

(Title 29, United States Code, Sections 186(a)(1), (b)(1) and (d)(2).)

13

COUNT NINE

(Unlawful Acceptance of Payments by Labor Representative
– John Stamberger)

The Grand Jury further charges:

25.  Paragraphs 1 through 10 of this Indictment are repeated and realleged and incorporated by reference as though fully set forth herein.

26.  From in or about November 2002, up through and including in or about December 2003, in the Southern District of New York and elsewhere, JOHN STAMBERGER, the defendant, being a representative of employees who were employed in an industry affecting commerce, to wit, members of the U.B.C.J. who worked for a construction contractor, unlawfully, willfully, and knowingly did receive and accept, and agree to receive and accept, a payment, loan, and delivery of money and other thing of value exceeding $1,000, from an employer and persons acting in the interest of such an employer, to wit, STAMBERGER, while acting as a shop steward for the U.B.C.J. at a jobsite at 89 West Third Street, New York, New York, received cash bribes from CC-1 of On Par, a contractor that had signed a collective bargaining agreement with the U.B.C.J. and was doing work at that jobsite, in exchange for STAMBERGER'S agreement to submit false shop steward reports.

(Title 29, United States Code, Sections 186(a)(1), (b)(1) and (d)(2).)

14

COUNT TEN

(Perjury – Michael Brennan)

The Grand Jury further charges:

27.   On or about July 30, 2004, in the Southern District of New York, MICHAEL BRENNAN, the defendant, while under oath in a proceeding ancillary to a court of the United States, to wit, a deposition conducted by court-appointed Independent Investigator Walter Mack in <u>United States of America v. District Council of New York City and Vicinity of the United Brotherhood of Carpenters et. al</u>, 90 Civ. 5722 (CSH), a case pending in the United States District Court, Southern District of New York, unlawfully, willfully, and knowingly made false material declarations, to wit, MICHAEL BRENNAN, the defendant, gave false testimony, including the following underlined testimony:

(i)      Q.   As far as you know, the fact that you are repeatedly dispatched to On-Par is simply a matter of luck of the draw; is that correct?

         A.   <u>That's right.</u>

*Statements Regarding BRENNAN's assignment to an On-Par jobsite at 130 West 34th Street on or about September 19, 2000*

(ii)     Q.   Do you have any recollection, Mr. Brennan, of having any discussions with anyone concerning the appropriate skills to be requested for this job . . . [p]rior to the dispatch?

         A.   <u>I didn't have a discussion with anybody about</u>

15

<u>prior skills . . . Prior, no.</u>

(iii)   Q.   [W]hy was the welder skill one of the skills that was required of the shop steward, the answer to that is?

   A.   <u>I don't know why it was for On-Par on that dispatch, but I know that on that job there was welding by carpenters, and they thought they had that work.  I have no idea.</u>

(iv)   Q.   [Y]ou never resolved why the welder skill was a dispatch skill for your dispatch?

   A.   <u>Right.  Again, I don't know what skills they used in my dispatch.  I just know I'm dispatched.</u>

(v)   Q.   Before you were dispatched, you had no discussion with anyone about what skills were appropriate for that job, is that correct?

   A.   <u>That is correct.</u>

*Statements Regarding BRENNAN's Assignment to On-Par jobsite at Times Square Tower in or about October 2001*

(vi)   Q.   Was there any discussion in this time period that there was going to be a big new job that might be of interest to you?

   A.   <u>No.</u>

(vii)   Q.   [B]efore you received that call ... that referred you to the Times Square Tower, did you have any reason to believe that there was in fact a large On Par job becoming available?

16

A.    <u>Did I have any reason to believe that - no.</u>

(viii)   Q.    [D]id you have any reason to believe that a large
              On-Par job was available before the dispatch?

A.    <u>No, no reason to believe that.</u>

(ix)    Q.    Nobody mentioned it to you?  I don't care who it
              was.

A.    <u>No.</u>

(x)     Q.    Did you ever have any conversation prior to your
              dispatch, with any employee or representative of
              On-Par Contracting, about this job, before you
              were dispatched to it?

A.    <u>No, sir.</u>

(xi)    Q.    So, when you did receive the dispatch, it was a
              complete surprise to you, location and contractor?

A.    <u>It is a surprise; you are lucky to go [to] a job,</u>
      <u>yeah.</u>

(Title 18, United States Code, Section 1623.)

<u>COUNT ELEVEN</u>

(<u>Perjury - Brian Carson</u>)

The Grand Jury further charges:

28.    On or about September 19, 2005, in the Southern
District of New York, BRIAN CARSON, the defendant, while under
oath in a proceeding ancillary to a court of the United States,
to wit, a deposition conducted by court-appointed Independent
Investigator Walter Mack in <u>United States of America v. District</u>

17

<u>Council of New York City and Vicinity of the United Brotherhood</u> <u>of Carpenters et. al</u>, 90 Civ. 5722 (CSH), a case pending in the United States District Court, Southern District of New York, unlawfully, willfully, and knowingly made false material declarations, to wit, BRIAN CARSON the defendant, gave false testimony, including the following underlined testimony:

(i)    Q.    At any time, on any of your jobsites, for any contractor in the last five years, have you been offered cash or has anyone sought to request of you that you violate your obligation as a union carpenter?

       A.    <u>No, sir.  Nobody that I can recall.</u>

       Q.    And that includes the On Par situation as well?

       A.    <u>Yes.</u>

(ii)   Q.    [W]ith respect to the 63 Wall Street jobsite for On Par Construction, we received at least three, I think four anonymous hotline calls to the effect that there were carpenters working at 63 Wall Street who were not on your sheets [<u>i.e.,</u> shop steward reports], and who were in fact being paid cash.

       A.    <u>Not to my knowledge, sir.</u>

       Q.    I want to give you some additional information, and then I want you to explain to me . . . what happened on this jobsite, because we do have

18

carpenters who have appeared here who have sworn
under oath that they worked at 63 Wall Street and
received cash and not benefits.

A.   <u>I find that very hard to believe.</u>

(iii)   Q.   Did you at any time have reason to believe when
you were the shop steward on 63 Wall Street, that
there were carpenters on the site who were being
paid cash and not benefits?

A.   <u>No.</u>

(iv)   Q.   To the best of your knowledge, are the shop
steward reports that you completed for 63 Wall
Street, are they accurate in the sense . . . that
they record each carpenter on the site for the
hours that they were on the site?

A.   <u>Yes.</u>

Q.   Are there any exception[s] to that?  Because there
are - I don't want to surprise you.  There are
people who have testified who have checks from
these On Par accounts, in which their testimony
has been, they were on the site and were off the
shop steward report.

A.   <u>Negative.  No.</u>

Q.   Never happened?

A.   <u>Never happened.</u>

(Title 18, United States Code, Section 1623.)

19

## COUNT TWELVE

### (Obstruction of Justice)

The Grand Jury further charges:

29.  In or about July 2004, in the Southern District of New York and elsewhere, MICHAEL BRENNAN, the defendant, and others known and unknown, unlawfully, willfully, and knowingly did corruptly obstruct, and impede, and endeavor to obstruct and impede, the due administration of justice, to wit, while subject to an order by court-appointed Independent Investigator Walter Mack in United States of America v. District Council of New York City and Vicinity of the United Brotherhood of Carpenters et. al, 90 Civ. 5722 (CSH), to produce all records in his possession pertaining to job sites at which BRENNAN was a shop steward for On Par, BRENNAN purposely destroyed all such records in his possession to impede Investigator Mack and the United States Government.

(Title 18, United States Code, Section 1503.)

## COUNT THIRTEEN

### (Wire Fraud – Deprivation of Honest Services)

The Grand Jury further charges:

30.  From in or about April 2000, up to an including in or about December 2004, in the Southern District of New York and elsewhere, MICHAEL BRENNAN, the defendant, unlawfully, willfully, and knowingly, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud and to

obtain money and property by means of false and fraudulent
pretenses representations, and promises, and to deprive the
District Council and its members of the intangible right to
BRENNAN's honest services as a District Council shop steward by,
among other things, (i) soliciting and accepting illegal cash
payments from a contractor whose employees he represented,
(ii) filing false shop steward reports, and (iii) violating his
duty to disclose material facts concerning wrongful and corrupt
conduct by himself and the contractor, did transmit and cause to
be transmitted by means of wire communication in interstate
commerce, writings, signs, signals, pictures and sounds for the
purpose of executing such scheme and artifice, to wit, BRENNAN
participated in a fraudulent scheme to defraud the District
Council and the District Council Benefit Funds and caused and
aided or abetted wire transmissions between New York and New
Jersey in furtherance of that scheme including the wire transfer
of fraudulent remittance reports from On Par to the District
Council Benefit Funds.

(Title 18, United States Code, Sections 1343, 1346, and 2.)

### FORFEITURE ALLEGATION

31.  As a result of committing the employee benefit
plan embezzlement offenses alleged in Counts One, Two, Three,
Four and Five of this Indictment, and the bribery offenses
alleged in Count Six, Seven, Eight and Nine, of this Indictment,
MICHAEL BRENNAN, BRIAN CARSON, JOHN STAMBERGER, and MICHAEL

VIVENZIO, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any property constituting or derived from proceeds traceable to the violations, including but not limited to at least $1,000,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offenses.

<u>Substitute Asset Provision</u>

32.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C.

§ 853(p), to seek forfeiture of any other property of said

defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981 and
Title 28, United States Code, Section 2461.)


FOREPERSON

LEV L. DASSIN
Acting United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

**- v. -**

**MICHAEL BRENNAN,**
**BRIAN CARSON,**
**JOHN STAMBERGER, and**
**MICHAEL VIVENZIO,**

**Defendants.**

**INDICTMENT**

S2 08 CR 828

(Title 18, United States Code, Sections 371, 664, 1343, 1346,
1503,1623 and 2; Title 29, United States Code, Sections 186.

Lev L. Dassin.
Acting United States Attorney.

**A TRUE BILL**

Foreperson.